We want to welcome everyone to the 4th Circuit Court of Appeals today, glad to have you here. We've got four interesting cases. The first one is Alcala v. Hernandez. Mr. Abey, pleased to hear from you, sir. Yes, Your Honor, may it please the Court, Matt Abey of Nelson Mullins, on behalf of the Petitioner-Appellant Fernando Contreras Alcala, a father who has been fighting for the return of his children to Mexico ever since they were abducted by their mother and illegally smuggled into the United States in 2013. Your Honor, before the Court is truly a venue determination. A venue determination, Your Honor. A determination of what country should decide the tough questions of child custody and child preference. Your Honor, the facts of this case and the purposes of the Hague Convention support those tough decisions being made in Mexico. The country that understands these children's culture, understands their language, and understands what's in their best interest. This Court today is not being asked to determine what is in these children's best interest. It's not being asked to determine where the children would lead a better life. Instead, it's being asked to set the table for where that determination should be made. It's asked to determine whether or not the Court below erred in interpreting the Hague Convention more broadly than was intended. Well, why isn't the child a settled child under the Hague Convention? Why is the child? As the judge found. The child is not settled for a number of reasons. First, Your Honor, the child's not settled because their lives aren't stable. They have moved around, bounced around to three different residences in a short 14 months. They attended three different schools in a short 14 months. And, Your Honor, I referenced they because there were two children. There was a stipulation in the record that what happened to one would happen to the other. They're a package. That's correct. Everybody agrees with that. That's right, Your Honor. You can use singular or plural, however you want to do it. And that was a stipulation. But the judge said they're well settled. He did. He found that and ruled that in this case. That's the issue that comes up here, right? Yes, Judge King. We would not say that the judge necessarily found that. We would say that he concluded that, and in doing so, he misapplied the convention. But in this type of case, under the Hague Convention, once the district court judge has made those determinations, what deference or what weight do we give those findings? Well, Your Honor, under Maxwell, we defer to the historical narrative and apply a clear error standard of review. However, the interpretation of the treaty and the application of the treaty to those facts, the court has plenary review over those. What about the treaty that we apply here would change the result? Well, Your Honor, as this court has said in Miller, the affirmative defenses, including the well settled defense, is to be interpreted narrowly. Ms. Perez-Vera, who is the reporter to the convention, suggested that a restrictive approach to the application of the well settled defense was necessary. Otherwise, the rule would, or the exception would swallow the rule. And that's what we have here, is that… But the convention doesn't really give us much guidance as to what settled means or what maturity means. You're exactly right, Judge Floyd. It does not. It does not define settled. And, in fact, as other courts have noted, when you look at settled in Black's Law Dictionary, it's really kind of equivocal. There's no good definition. It can mean a number of different things in context. However, in this situation, we understand, when we look at the Second Circuit's opinion in Lozano, that it has a couple of different components. It's really a two-part test. You look first to the stability, and stability that evidences a permanent relocation to the United States. Well, let me tell you what is of concern to me here in this case. That is that the district court is the court that heard all the witnesses, evaluated all the evidence. All we have is a cold record. And it seems like to me there's at least some sort of a heightened burden that you must meet in that circumstance in order for us to determine that the children are not well settled. Because there certainly are facts in the record, it seems, from which you could make a reasonable argument for a well-settled finding. So it strikes me that most of your argument goes to, we don't dispute any of the factual findings. We just think the judge ought to have reached a different conclusion. Well, Judge, I would disagree with you. We do believe that there are a number of facts that were found by the district court that were clearly erroneous, that aren't supported by the record. But this court doesn't have to decide this under the clearly erroneous standard. Because of the misapplication of the treaty to the facts. All right, well, tell us what the misapplication of the treaty is. Well, first off, Your Honor, the court below did not apply the two-prong analysis that's necessary. It did not look at stability evidencing a permanent relocation. And then did not look at the substantial evidence of significant connections to the United States, such that removal and return to Mexico would cause some type of harm to the children. There's no evidence, absolutely zero evidence in the record, that the children would suffer some sort of additional harm were they to be returned. And that's kind of an underlying tenet of the Hague Convention. You look to deter parental abductions internationally. But the drafters of the convention understood that at some point, you could get to where the children had become so well settled and so rooted in the community, that you would do harm to the children by returning them. In this case, however, Your Honor. The treaty provides a prerequisite of a year, I think, before you can make the well settled claim. That's correct, Your Honor. And there's no question in this case that the year passed. That's right. By only a brief few months. But it passed. It did, yes, Your Honor. Fifteen months is what it was. And we do not contest that. There's evidence in the record as to why that delay. What you had here, I almost think you had what you had as a trial by the court. You had a trial to the court of the issue of whether they're well settled or not. That's correct, Your Honor. And when you have a trial to the court, I mean, we sort of look at that as like a verdict or something. That's right, Your Honor. We give deference to it. Look at it in the light most favorable to the prevailing party or something. That's right. But even if you do that or even if you treat this almost under a summary judgment standard where take all the inferences in the light most favorable to the mother in this case, the father still is entitled to return of the children because the court erred by not applying the right test. There are no findings of fact or conclusions of law by the court below that there was any evidence of any connections to the United States. And the State Department in their public notice 957 says that nothing less than substantial evidence of significant connections is enough to carry this burden. The court just simply ignored that and did not find any connections. They're living here and they're going to school here, going to church here. That's correct. They were surrounded by family and people they deemed to be family who they identified with. The boy, the oldest one, spoke English. That's right. And we believe that that evidences the ability to make connections with the local community. It sounds like he was doing pretty well in school. He was doing well in school. But he was receiving some accommodations that would allow him to retake tests if necessary, have extra. I thought when I read it, he wasn't doing it. He was actually doing well without all that. According to one teacher that he, in his English class, wasn't retaking. We don't know about the other teachers, but that same teacher did say that he received some accommodations, just he didn't recognize any or remember any instances where tests were retaken or extra time was given. Well, the mother also raised the question as another basis that you should consider my son's views. And the issue becomes at what age is he mature enough to say that's what I want to do? What's your thought about that? That's correct, Your Honor. And there's really no evidence in the record to show that Mother carried her burden of presenting enough evidence for the court to make that determination. The court found in your favor on that issue. That's correct. You like that finding. We do like that finding. You don't like the other one. We do like that finding because it's supported by the lack of evidence. The mother had the burden in this case to produce evidence that not only was the child sufficiently mature, but evidenced a sufficient objection to returning. The only thing that was presented was the interview, the forensic interview that was conducted of the child. There was no guardian ad litem appointed. There was no expert witness that was brought to court to discuss the maturity of the child. There was no discovery conducted on that point. These are all things that in other cases the parents that are raising this mature child objection have done. The mother in this case failed to carry her burden at all because the only evidence presented was the fact in this forensic interview that the child wanted to stay here because he couldn't eat cheeseburgers and pizza in Mexico. Is that the issue she's appealing? That's the issue on the cross appeal. That's correct. And so not only does she have the burden below, but now the burden at this court. But, Your Honor, the real thrust of the issue here today is well settled and what degree immigration status would play. And, J.J., I see you're looking at the time. Is the light not working today? I don't have any time in front of me. No, we haven't used this courtroom for a while. Is it working over there? It is working over here, yes. Why don't you tell him how much time he's got? You have four minutes and 45 seconds, and I'll get somebody on that. All right. Thank you, Your Honor. Looking at the immigration status, which was a big area of contention at the court below, both sides agree that none of the parties involved are in the United States legally. In fact, they completely thwarted immigration law by illegally smuggling these children into the United States. If that were a deciding factor, then all these cases would be decided on that basis. Right. And just simply being here illegally is not the deciding factor. Is that relevant? It is relevant, Your Honor. It's relevant but not deciding, doesn't carry the day. It does not. And that's what Judge Harwell said. Well, no, Your Honor. He looked at immigration status and said that it was cause for concern. But again, he missed— But it didn't carry the day. That's correct. He said the other factors carried the day and that they were well settled. Right. But he misinterpreted the extent to which immigration status could be considered. He said that immigration status can only be considered when there's an immediate threat of deportation, and that is not the standard, and that's not the standard we would ask the Fourth Circuit to adopt. We would ask the Fourth Circuit to look at whether or not there are any prospective changes in that immigration status. In this case, there are none. The children and the mother are not eligible for this DACA status, which is currently being appealed to the United States Supreme Court. They're not eligible for any other type of citizenship or things of that nature. Unlike the CSB case out of the Ninth Circuit, unlike Lozano, the Second Circuit opinion, which found that immigration status wasn't dispositive in that case, both of the abducting parents in that case— Well, from a practical standpoint and from the way immigration laws are administered now, by the time they ever got around to figuring out the immigration status, you could have already had the custody hearing in the state court, and the state court could have made the determination of where the children go. But to decide in that manner, Your Honor, would be to sanction the illegal conduct that the mother has engaged in. Well, the treaty doesn't—I mean, if the treaty or some other separate statute the Congress adopts says that's what we're supposed to do, then that's what we've got to do. But unless you can tell us there's some provision in the treaty that hasn't been cited or some statute that hasn't been cited that does that, then I don't think it's anything but just part of the totality of the circumstances. Well, I would agree that it's part of the totality of the circumstances in the initial well-settled determination, but it can also be considered in the discretionary return portion that the court looks at after it determines whether— You want us to do what? Send them back to Mexico? We would like you to reverse inner judgment for father and her man solely for the purpose of deciding the prompt return of the children to Mexico. So you want us to basically order them to return to the father and take them away from their mother? No, Your Honor. We're asking that they be returned to Mexico and that the mother be able to decide how she wants to— You want us to turn them to the father and take them away from the mother, which is a big step. And, you know, most all the law of the 50 states is you keep children with their mother if there's a big fight. And we would disagree, Your Honor. We're not saying that the children have to be taken away from mother, only that they have to be—  No, Your Honor. In fact, there's evidence in the record that the Mexican consulate has offered to repatriate the children and their mother if the court decides that they must be returned to Mexico. See, the reverse is not true. The father cannot—if this court affirms the court below, the father cannot come to the United States and ever have any type of relationship with the children. Whereas if the court reverses and remands for a determination of prompt return, the mother is free to return as— Isn't the whole purpose of this to set the stage so that the appropriate state court can make a custody determination? That is correct. And the Mexican— And that's what happens if we affirm, Judge Harwell, that it's up to the South Carolina court. Which, again, the father would be placed in the position of having another uphill battle, which have cultural and linguistic barriers. I bet the light would work if your red would be on by now. I've got about 20 seconds, Your Honor. Go ahead. But, like I said, the mother is not required to return to Mexico. She may determine that she wants to stay here. But Mexico is the proper court to determine whether or not these children should be in the custody of father or mother because they understand the culture, they understand the language, and what's in those children's best interest. Thank you, Your Honors. Thank you. We appreciate it. Mr. Everly? Oh, perfect. When you always buy from a contractor with the lowest price, sometimes you get what you pay for. I appreciate that. Go right ahead, sir. Your Honors, good morning. Good to have you here. Thank you very much. May it please the Court, my name is Kevin Everly. I'm from Charleston, South Carolina, and I'll be speaking today on behalf of the mother in this hate convention case, Ms. Claudia Hernandez. In the summer of 2013, Ms. Hernandez emigrated from Mexico with her two children and arrived in the community in the PD area of South Carolina where her mother, two sisters, and their family had already been living with that incident for about a decade. She quickly settled into a new life with her twin. She immediately took a job. She enrolled her oldest son, the only one who was of school age, in the public schools in the area. She began a relationship, actually, with a man she had met in the community that she is currently planning to marry and began attending a church. That continued unabated for over a year until the father began this action in October of the following year, more than a year later, even though at all times he had already known where the children were located. He eventually brought this action in. There's some evidence in the record, but I can't remember the time frame. Was it prior to the initiation of the suit in the United States where the father had Internet contact, phone contact, Facebook contact with the children? I believe it was before, Your Honor. There were three defenses that were raised at trial. Two have been preserved for appeal, one by each side. The main appellant, the father, is raised and is basing most of the argument on the settled child defense, which was raised under Article 12 of the Hague Convention. Basically what that says is two wrongs don't make a right. Before I get into the merits of that, I do want to spend just a second and address something about the standard of review in this case to address some of Your Honor's questions. Admittedly, the Fourth Circuit has a de novo review over issues of law and the interpretation of language and treaties. However, factual findings by the trial court in a situation like this and their use in resolving legal questions should be reviewed by a higher heightened standard of clear error or abuse of discretion. Just recently, the First Circuit, for example, in the Yaman case, confronting this exact issue, wrote, such relative weighing of the interest by the district court is not for this court to second guess. This court should take the opportunity to settle for the first time in the Fourth Circuit exactly what factors. So what's the standard of review then for the question of well settled or settled? For the weighing of the factors, it would be a clear error standard. I understand that. What's for the question of whether they're settled or not? The issue. Clear error. Is that clear error or is that de novo? No, it's clear error, Your Honor. Well, you say in your brief it's de novo. No, Your Honor, it's a de novo standard. In your position. No, no, Your Honor. Yes, you are. I've got it right in front of me here. I can read it to you. You can do that. I mean, that's a question of law. I mean, you couldn't change the law even if you could see it the other way, but you took a different position in your brief. If I can explain that, Your Honor, it's a two-part standard. What the factors are, which factors are given any weight. This court applies a de novo review to the trial court's legal determination of whether the sum total of those factors demonstrated that son was settled. That's correct. And you cite a non-certain case for that proposition. So you say it's de novo. That's correct, Your Honor. However, the individual weight of the factors has to be reviewed for a clear error standard. And in this situation, the trial court has already put conclusive weight on all six of the factors, which leaves really nothing for this court to review. So the weighting of the factors and the choice of the factors is a factual determination? The choice of the factors is a de novo review. This court has never decided which factors should be given any weight at all. Different courts have basically played around with the same half-dozen standards. What's wrong with adopting the Lozano standard? The Lozano standard, the Second Circuit, at least, the well-settled idea, didn't move on to the Supreme Court. But the Second Circuit standard would be a fine balancing of the various factors. Each one of those factors, or certainly the strong combination of those factors, weighs in favor of a well-settled child in this case. Well, let's go back for a second. I want to make sure I understand your response to Judge King's question. Are you saying that the weighting of whatever factors are chosen, if the district court weights one as a 10 on a scale of 1 to 10 and another factor is a 1, that those are factual determinations to which a clearly erroneous standard applies? Yes, Your Honor. Of course, the trial court doesn't actually assign any sort of numerical weight. But more important than that is the different courts have chosen five, six, and seven different variations of the same thing. To the extent that this Court settles on, say, the same half-dozen factors that various courts have adopted, it's simply for the Court to pick up and review the findings that Judge Harwell made and put them in the pans of a scale and decide whether the sum total of those weights that have been already chosen by Judge Harwell tip in favor of a finding of well-settled or not. And they clearly do. Moreover, we're not really starting with an equal pans of a scale. The father in his brief has already conceded that at least several of the factors weigh in favor of a settlement. The age of the child, his educational successes, his family and friends in the community. The remaining factors also weigh in favor of a settled child. There's really very little disagreement about the facts of this case. And I'm surprised to hear that this morning there's some question about the facts. The child in this case has extensive family in the area, has done very well in school. And on that point, I should also add that while my friend Mr. Abia suggested that the testimony about his success was the product of only one teacher, that's because the only teacher that was called of his current schooling was called by the mother. And he offered the exact testimony, which is he's doing perfectly well with no accommodations. Nobody testified to the contrary because the father didn't bother to call anybody. So the child is doing perfectly well in school. He has a perfectly happy life here. He's well connected to the community. And the court should take this as an opportunity to affirm the decision of the trial court on an evidentiary standard as much as anything else. The one other point that I would like to mention about this is the discussion about the illegality  To the extent that illegal status deserves any weight at all. Again, Judge Harwell has already decided that there is no likelihood that the child in this case, or anybody in the family, will be facing proceedings for deportation. One of the reasons that it doesn't make sense to consider immigration status as a stand-alone factor is because it is already included in the other factors. For example, if a mother feared deportation, she could conceivably withdraw her child from the public schools in an effort to avoid some sort of an official record. Or could move from residence to residence to hide out from the deportation agents. And in that sense, immigration status could be a factor in the analysis. But without any evidence that there is anybody pursuing deportation in this case, and without any evidence that it has affected this child's life in the least, there is no reason to put any special weight on the factor at all. And certainly not... What would happen if the ICE folks had placed a detainer against the mother? I mean, I know that's not your case, but... Well, if the federal agents had been pursuing some sort of an action against the mother, I suppose depending on how far it went, of course, the child could be temporarily placed with the rest of the family in the community and be left in this community regardless. As a juvenile getting protection in the immigration system, I suppose. I guess it would sort of depend on how far that went. But in November of 2014, the Department of Homeland Security published its... I'll call it a white paper detailing the categories of immigrants and the weighting of those people for purposes of pursuing deportation, including, for example, people who are a risk to national security and habitual criminals and things like that. And the mother fits into none of them. None of them. Is there a warrant for her arrest in Mexico? Not that I'm aware of, Your Honor. Not that I'm aware of. Certainly not in this country. There is no sort of legal proceeding pending against her. And so the illegal status simply... It has no application to this case whatsoever. In fact, of course, if the mother truly feared deportation, she would not have driven to the federal courthouse for a trial for two days and gone into a courtroom surrounded by federal marshals and testified in open court that she was here illegally. So there's no particular reason to feel that she is going to fear any sort of deportation, either in the long run or in the short run. But, again, all of the six factors, or five, however the court chooses to split them up, all of the factors weigh in favor of a settlement in this case. And although there has to be, as my colleague at the opposite table has said, there has to be substantial connections, it's not substantial evidence of those connections, it's evidence of substantial connections. Church, residence, family, not just passing through. That's what the court... But, again, the court looked at all those and said they're settled. Yes. Is that reviewed de novo or for clear error? You say in your brief it's reviewed for de novo. Your Honor, let me clarify my position in the brief. A clear error should be used to review those findings by the trial court. That's not what I asked you. The issue of settlement. Yes. Is that de novo or a clear error? Clear error. All right. That's your position. I just wanted to get your position. Yes. Again, I'm sorry if I'm misunderstanding. You said it. Yes. The opposing counsel talked about the child being moved two or three different times. Yes. In my reading of the record, and correct me if I'm wrong, the moves were all within the same geographical area. Yes. And there was no eviction or things like that. No. That's exactly true, Your Honor. The first time that the mother moved, when the mother first arrived, like many people I suspect, maybe us in the courtroom, when she first arrived, of course, she moved in with her family while she was becoming acquainted with the community. She soon moved out into a standalone home that she occupied with her two children. She's only moved once since that time, and it was not for any sort of improper purpose. It wasn't that she was evicted or was on the run from the law or anything like that. Rather, she decided to move in with the man that she's preparing to marry now. The total distance between the homes is 40 minutes. So in a rural area of South Carolina, that's relatively close. I would like to address for a moment, if I may, the opinion of the child issue. The trial court, although found that the child was indeed well settled in this community, disagreed that the child had mature objections to returning to Mexico. The error here is one of law and not a factual finding. Disagreement. The trial court sort of cryptically referred to We agree with you on the well settled issue. We don't need to address this. That's correct, Your Honor. Either one is sufficient for the mother's case. So if we agree with you on the well settled issue, your appeal is moot. That's right, Your Honor. Dismissible. Yes. Yes, that's right, Your Honor. We affirm on the first appeal, the second one. Yes, that's exactly right, Your Honor. It's an either or. It is perfectly fine with us. The only thing I would point out on that second issue is that the trial court seems to have conflated the preference for a parent and the preference for a country. And the description that the court used in its order sort of partakes of both and even refers to the fact that the child based his opinion on a comparison of lifestyles in the country, and yet that's precisely what the Hay Convention is supposed to measure as a comparison of lifestyles in the two countries, not lifestyles in the sense of creature comforts, but lifestyles in comparing life in Mexico and life in this country. The child, when asked during his forensic interview, burst into tears at the possibility of returning to Mexico. And among the reasons that have been mentioned is that it was unsafe in Mexico. He was unable to even go and play with his friends because of possible safety issues. In this country, he is not choosing to stay in this country simply because of cheap Halloween candy and Christmas decorations. He's choosing to stay in this country because he has friends and family here who he loves. He's choosing to stay here because education is better. He's choosing to stay here because of safety reasons. Those are the sort of opinions that a child can certainly appreciate and that he testified to and know in certain terms. And so for that reason, the court should reverse on that second issue. So for both reasons, actually, the child deserves to remain in this country pending whatever custody battles fought between the parents in whatever jurisdiction it ends up in. And so for those reasons, we would ask the court to affirm the decision of Judge Harwell as to the settled idea and reverse as to the opinion of the child. Thank you. Thank you, sir. Mr. McGee? Yes, Your Honor. May it please the panel, Billy McGee on behalf of the petitioner as well. Your Honor, first I'd like to clarify just a couple things for the record. I believe, Judge King, you asked if there was a warrant out for the mother's arrest in Mexico. There is. That's at Joint Appendix 043. It doesn't state exactly. Does it relate to the? It is related to the illegal smuggling of her children across. Relates to their children? Yes. Kidnapping them. Does that make any difference since the counsel office said that he would repatriate both? No, Judge, it doesn't. But it indicates the father reported this to the police the day after it occurred. So I don't want the panel, and it sounds like from the panel's discussion earlier that, Your Honor, understand that the day after this occurred, he began the proceedings to try to get this back, even though it was 14 or 15 months, as Judge King points out. In Mexico, you can be charged with kidnapping your own children? Absolutely, as you can hear. One thing that I did want to get on before I move to the mature child objection, Judge, is, Judge Floyd, you mentioned that the three moves in 14 months were in the same geographic area. That is within a 40-minute radius. However, the other courts in other circuits have found that that is a definitive unstable finding. And Henry Koch, KOC of the Eastern District of New York, found that three residences in two and a half years in the same city was not stable. We're not talking about whether it matters whether they're in Chicago or New York. It's moving residents, three different residents, three different schools, three different sets of friends, goes to inherently unstable, Judge. Also, no extracurricular activities done in this case. And as Mr. Eberle noted, as Your Honor, Judge King pointed out, we believe that this is a misapplication of the law to the facts and, therefore, is reviewable de novo. We agree with Mr. Eberle's position in his brief and disagree that it is a clear error. Are you saying that the question of settled or well settled, whatever it's called, is reviewed by us de novo? Yes, Your Honor. Our position is that the legal standard was misapplied to the facts of the case, which requires a de novo review. Also, there was another, there's a discretionary aspect to the Hague Convention as well under Article 18, which states that even if there is a well settled defense or a mature child objection, the court does not have to honor that, that the court can still repatriate the child. And the court decided it would not do that? It did, but it was an even more egregious error, a misapplication of law in that case, because the judge did not- Isn't that a separate issue that we do review for abuse of discretion? No, Your Honor. In that case, the judge misapplied the law as set forth in Justice Alito's list of Lozano factors. He did not address three of them. Isn't that a concurring opinion? It was. It was, Your Honor, but it has been referenced- I thought this extra provision in the Hague Treaty for discretionary return after finding on well settled or any of these other defenses, that that was purely discretionary to the district court. It is. But we review that for abuse of discretion. Well, we believe that under an abuse of discretion standard, we still win. However, in this case- I didn't say that, but what the judge said is exactly right. Well, it's Judge Harwell's discretion based on legal principles. But Harwell said, I'm not going to exercise my discretion. And Judge Harwell relied on, he cited and relied on some of the prongs of the Alito Lozano list, but he didn't apply and misapplied others. And so while the judge does have discretion, he's got to correctly apply the law, and it's our position that he didn't, and therefore under the de novo standard. It sounds like you're making the argument that a list of factors in a single concurrence by a single justice is binding law. Judge Harwell believed it to be. He considered it. He just misapplied it. And if you're going to rely on a legal standard, you've got to correctly apply it. If you don't, this court sits to correct those. I would like to say, Your Honors, in closing, I see I'm almost done, that if the trial court's finding of well settled is affirmed in this case, this narrow and restrictive exception will swallow the rule. If all a parent has to show to thwart the fundamental principle of the Hague Convention is that the child does well in school, speaks English only while on school grounds, lives near a few relatives, and goes to church, it would be impossible to think of a situation in which a child would not be well settled. Our client has not seen his two boys in 1,009 days. Your Honor, may I finish just briefly? Sorry. He has missed his youngest son's baptism. He has missed his youngest son's first words and his first steps. He has missed his oldest son's successes and failures, his wins and losses, and countless other memories by no fault of his own. The time that has passed can't be made up. This is a result of the mother's unilateral and illegal decision to take her two children on an illegal and dangerous journey into the United States. The Hague Convention requires that these boys be sent back to their home where both their parents will be able to have their rights and obligations determined in a fair proceeding by the Mexican court. We ask your Honors to reverse the finding of well settled to affirm the decision that the child was not sufficiently mature to make the child objection and that the children be sent back to Mexico. Thank you, Your Honor. Thank you, Mr. McGee. Now, Mr. Everly, you have two minutes on that cross appeal, but you addressed it before. Are you satisfied with where you are? Very good. We'll come down to Greek Council. Judge Agee pointed out that all of you all are working for a bono in this case. If that's true, we really appreciate your work and thank you for it.
judges: Robert B. King, G. Steven Agee, Henry F. Floyd